```
              UNITED STATES DISTRICT COURT
                       FOR THE
              MIDDLE DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| HAILEY I. MILLER, | : | |
| | : | |
|     Plaintiff | : | No. 4:11-CV-00097 |
| | : | |
|   vs. | : | (Complaint Filed 1/13/11) |
| | : | |
| MICHAEL ASTRUE, | : | |
| COMMISSIONER OF SOCIAL | : | (Judge Munley) |
| SOCIAL SECURITY, | : | |
| | : | |
|     Defendant | : | |

**MEMORANDUM**

**Background**

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Hailey I. Miller's claim for social security disability insurance benefits and supplemental security income benefits.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that Miller meets the insured status requirements of the Social Security Act through December 31, 2012. Tr. 10 and 12.[1]

---

1. References to "Tr.__" are to pages of the administrative record filed by the Defendant as part of his Answer on March 21, 2011.

Supplemental security income is a federal income supplement program funded by general tax revenues (not social security taxes).  It is designed to help aged, blind or other disabled individuals who have little or no income.

Miller was born in the United States on October 14, 1983. Tr. 27 and 79.  Miller graduated from high school on June 5, 2002, and can read, write, speak and understand the English language and perform basic mathematical functions. Tr. 27, 156, 198 and 200.  During her elementary and secondary schooling Miller attended regular education classes other than receiving extra help with reading. Tr. 162.  In April, 2008, Miller completed training to become a certified nursing assistant. Id.     Miller's past relevant employment[2] was as a certified nursing assistant which was described by a vocational expert as semi-skilled, medium work; a cashier, described as unskilled, light work; a stable hand tending horses, described as unskilled, heavy work; a laborer in a meat packing plant, described as unskilled, medium work; and as a research technician (laborer), described as unskilled, medium work.[3] Tr. 42, 158 and 201-202.

---

2. Past relevant employment in the present case means work performed by Miller during the 15 years prior to the date her claim for disability was adjudicated by the Commissioner.  20 C.F.R. §§ 404.1560 and 404.1565.

3. The terms sedentary, light, medium and heavy work are defined in the regulations of the Social Security Administration as follows:

Miller's history of employment and earnings only spans 8 years. Records of the Social Security Administration reveal that Miller had earnings in the years 2001 ($1422.36), 2002 ($6144.27), 2003 ($11386.92), 2004 ($15134.16), 2005 ($19014.49), 2006

---

> (a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
>
> (b) *Light work*.  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
>
> (c) *Medium work*.  Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can do sedentary and light work.
>
> (d) *Heavy work*.  Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.

20 C.F.R. §§ 404.1567 and 416.967.

($23025.93), 2007 ($19855.71) and 2008 ($11882.61).  Tr. 132. Miller's total earnings were $107,866.45. Id.

Miller claims that she became disabled on August 24, 2008,[4] because of psychiatric impairments, including bipolar disorder and anxiety. Tr. 69 and 157.  Miller also contends that she suffers from chronic fatigue and migraines. Tr. 179.

At the administrative hearing held in this case on March 18, 2010, Miller testified that she had no physical limitations which prevented her from sitting, standing or walking. Tr. 31.  Miller testified that she was able to take care of her personal needs and perform household tasks, including cleaning, cooking and laundry, and that she could take care of her five year old daughter. Tr. 32-33. In fact she testified as follows: "If it means keeping my daughter safe and well then I do it regardless of how I feel." Tr. 33.

In a document filed with the Social Security Administration entitled "Function Report - Adult" Miller indicated that she had no difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, stair climbing, seeing, completing tasks, understanding, following instructions, using hands, and getting along with others. Tr. 172.  She merely indicated that

---

4. Miller was 24 years of age on the alleged disability onset date and only 26 years of age at the time of the administrative law judge's hearing held on March 18, 2010.  Miller is considered a "younger individual" whose age would not seriously impact her ability to adjust to other work.  20 C.F.R. §§ 404.1563(c) and 416.963(c).

4

she had some memory and concentration problems. Id.

At the time of the administrative hearing Miller was working part-time as a cashier at a K-Mart up to ten hours per week. Tr. 28. Miller indicated that she could not work full-time because of mania, stress, anxiety and auditory hallucinations. Tr. 28-29. Miller has not alleged or claimed that she has physical exertional impairments that prevent her from working full-time as a cashier.[5]

On September 25, 2008, Miller filed protectively[6] an application for disability insurance benefits and an application for supplemental security income benefits. Tr. 10, 79-90 and 153. On February 18, 2009, the Bureau of Disability Determination[7] denied Miller's applications. Tr. 65-72. On March 17, 2009, Miller

---

5. At the administrative hearing, Miller testified that she was taking only one drug, Neurontin, for her anxiety and mood swings, and that she suffered no side-effects from that medication. Tr. 30-31. Medical records from August, 2008, (1) reveal that Miller did take the drug Geodon as a mood stabilizer and (2) suggest that Miller suffered tardive dyskinetic movements as a side-effect. Tr. 217. Tardive dyskinesias are involuntary movements of the tongue, lips, face. Miller suffered such involuntary movements around her mouth and lips. Id. Miller was weaned off of Geodon and no longer takes that medication. Tr. 266, 268. 269, 334, 384. By mid-April 2009 Miller was only taking Neurontin. Tr. 398 and 407-408.

6. Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

7. The Bureau of Disability Determination is an agency of the Commonwealth of Pennsylvania which initially evaluates applications for disability insurance benefits and supplemental security income benefits on behalf of the Social Security Administration. Tr. 65 and 69.

requested a hearing before an administrative law judge. Tr. 75-76. After 12 months had passed, a hearing before an administrative law judge was held on March 18, 2010. Tr. 22-44. On June 14, 2010, the administrative law judge issued a decision denying Miller's applications. Tr. 10-18. On June 29, 2010, Miller requested that the Appeals Council review the administrative law judge's decision and on November 18, 2010, the Appeals Council concluded that there was no basis upon which to grant Miller's request for review. Tr.1-6. Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

Miller then filed a complaint in this court on January 13, 2011. Supporting and opposing briefs were submitted and the appeal[8] became ripe for disposition on July 18, 2011, when Miller elected not to file a reply brief.

For the reasons set forth below we will affirm the decision of the Commissioner denying Miller's applications for disability insurance benefits and supplemental security income benefits.

**STANDARD OF REVIEW**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007);

---

8. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D.Pa. Local Rule 83.40.1.

Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial

evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**SEQUENTIAL EVALUATION PROCESS**

To receive disability benefits, the plaintiff must

demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating disability insurance and supplemental security income claims.  See 20 C.F.R. §404.1520 and 20 C.F.R. § 416.920; Poulos, 474 F.3d at 91-92.  This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[9] (2) has an impairment that is severe or a combination of impairments

---

9. If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit."  20 C.F.R. § 404.1510 and 20 C.F.R. § 416.910.

9

that is severe,[10] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[11] (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id. As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[12]

---

10. The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. §§ 404.1520(c) and 416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. §§ 404.1520(d)-(g) and 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 404.1523, 404.1545(a)(2), 416.923 and 416.945(a)(2). An impairment significantly limits a claimant's physical or mental abilities when its effect on the claimant to perform basic work activities is more than slight or minimal. Basic work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl, and handle. 20 C.F.R. § 404.1545(b). An individual's basic mental or non-exertional abilities include the ability to understand, carry out and remember simple instructions, and respond appropriately to supervision, coworkers and work pressures. 20 C.F.R. § 1545(c).

11. If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step.

12. If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id; 20 C.F.R. §§ 404.1545 and 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

**DISCUSSION**

The administrative law judge at step one of the sequential evaluation process found that Miller had not engaged in substantial gainful work activity since August 24, 2008, the alleged disability onset date. Tr. 12. The administrative law judge noted that Miller had engaged in work activity after the alleged onset date but that the work activity did not rise to the level of substantial gainful activity in light of the limited earnings received. Id.

At step two of the sequential evaluation process, the administrative law judge found that Miller had the following severe impairments: "bipolar disorder and mixed personality disorder." Id. The administrative law judge found that Miller's alleged migraine headaches (one every day or every other day) and anxiety attacks (two

or three per week) were non-severe impairments because the medical records did not reveal that she complained of headaches and anxiety attacks "at a frequency and intensity that she alleged in her testimony." Tr. 13.

At step three of the sequential evaluation process the administrative law judge found that Miller's impairments did not individually or in combination meet or equal a listed impairment. Tr. 13-14.

At step four of the sequential evaluation process the administrative law judge found that Miller had the "residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to simple repetitive tasks and low stress work defined as a stable environment without strict production quotas." Tr. 14.

Based on the above residual functional capacity and the testimony of a vocational expert the administrative law judge found that Miller could perform her prior relevant unskilled, light and medium work as a cashier and stable hand. Tr.18. Consequently, the administrative law judge found that Miller was not disabled and did not proceed to step five of the sequential evaluation process.

The administrative record in this case is 495 pages in length, primarily consisting of medical and vocational records. Miller argues that the administrative law judge erred by (1) rejecting the opinion of Michael Lavin, M.D., a treating

psychiatrist;(2) failing to consider and give appropriate weight to Miller's work history and work attempts; (3) failing to perform his affirmative obligation to assist Miller in developing the record; and (4) exhibiting bias against Miller.

We have thoroughly reviewed the record in this case and find no merit in Miller's arguments. The administrative law judge did an adequate job of reviewing Miller's vocational history and medical records in his decision. Tr. 10-18.  Furthermore, the brief submitted by the Commissioner thoroughly reviews the medical and vocational evidence in this case. Doc. 9, Brief of Defendant.  Because the administrative law judge adequately reviewed the medical evidence in his decision we will only comment on a few items.

Initially we will note that no treating physician, psychiatrist or psychologist has indicated that Miller suffered from mental functional limitations that would preclude her from engaging in her prior unskilled, light and medium work as a cashier and stable hand. In fact the closest item that comes to such a statement is a document entitled "Pennsylvania Department of Public Welfare Health-Sustaining Medication Assessment Form" completed on November 17, 2008, by Dr. Lavin. Tr. 226-227. In that form Dr. Lavin in a conclusory fashion stated that Miller was temporarily disabled for <u>less</u> than 12 months from August 24, 2008, to March 1, 2009, because of bipolar disorder without psychosis and a secondary diagnosis of impulse control disorder. Id.  Miller had to establish a disability

that lasted for a continuous period of 12 months or more. The document completed by Dr. Lavin does not satisfy that requirement.

As stated earlier in this order Miller earned $19,855.71 in the year 2007 and $11,882.61 in the year 2008. Both amounts are above the substantial gainful activity level.[13] Up until August 24, 2008, Miller was working full-time. Tr. 157. The medical records from Dr. Lavin reveal that Miller commenced receiving psychiatric treatment from him as early as September, 2006, and over the course of approximately two years while Miller was working on a full-time basis, Dr. Lavin and other medical professionals accessed Miller with Global Assessment of Functioning (GAF) scores ranging from 25-60.[14] The vast majority of the GAF scores during this period of time when Miller was employed were in the range of 45 to 50, representing

---

13. In 2007, the substantial gainful activity amount was $900 per month and in 2008 it was $940 per month. Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law and Procedure in Federal Courts, 218 (2011).

14. The GAF score allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness. *Diagnostic and Statistical Manual of Mental Disorders* 3-32 (4th ed. 1994). A GAF score is set within a particular range if either the symptom severity or the level of functioning falls within that range. Id. The score is useful in planning treatment and predicting outcomes. Id. A GAF score of 31-40 represents some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. Id. A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational or school functioning. Id. A GAF score of 51 to 60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning. Id.

serious symptoms or any serious impairment in social, occupational or school functioning. After August 24, 2008, the alleged disability onset date, there was no dramatic decrease in the average GAF score assessed by Dr. Lavin.[15] Under the circumstances – including the fact that Miller engaged in full-time employment prior to August 24, 2008 – the administrative law judge was not required to place much reliance on the low GAF scores assessed by Dr. Lavin.[16]

In finding that Miller was not disabled, the administrative

---

15. On August 14, 2006, Miller was assessed a GAF score of 60; September 11, 2006, a GAF score of 50; November 21, 2006, a GAF score of 45; January 8, 2007, a GAF score of 60; July 23, 2007, a GAF score of 25; July 27, 2007, a GAF score of 50; August 13, 2007, a GAF score of 50; October 24, 2007, a GAF score of 50; November 28, 2007, a GAF score of 50; December 21, 2007, a GAF score of 50; March 7, 2008, a GAF score of 50; April 16, 2008, a GAF score of 50; May 30, 2008, a GAF score of 40; July 3, 2008, a GAF score of 48; July 18, 2008, a GAF score of 50; and August 4, 2008, a GAF score of 50;  Tr. 207-210, 234, 236, 242, 243, 247, 253-255 and 258-263.  On August 24, 2008, the alleged disability onset date, Miller was assessed a GAF score of 40; August 27, 2008, a GAF score of 55-60; September 11, 2008, a GAF score of 40; September 23, 2008, a GAF score of 50; October 1, 2008, a GAF score of 55; October 13, 2008, a GAF score of 54; November 5, 2008, a GAF score of 54; November 19, 2008, a GAF score of 55; December 3, 2008, a GAF score of 50; January 29, 2009, a GAF score of 50; March 17, 2009, a GAF score of 48; March 23, 2009, a GAF score of 48; June 18, 2009, a GAF score of 53; August 22, 2009, a GAF score of 30; August 25, 2009, a GAF score of 45; September 2, 2009, a GAF score of 48; and February 2, 2010, a GAF score of 48. Tr. 215-216, 218, 264-269, 349, 387, 389, 441-442, 444, 477 and 480.

16. If an individual works full-time at a particular job for an extended period with a physical or mental impairment (or a low GAF score) and then alleges that he or she is disabled and can no longer work full-time, it is reasonable to conclude that absent a significant change of circumstances the individual can continue working full-time.

law judge relied on the opinion of Carl Sebastianelli, M.A., a state agency psychologist, who reviewed Miller's medical records. Tr. 282-298. Mr. Sebastianelli found that Miller was <u>not</u> significantly limited in 14 areas of mental functioning and only moderately limited in six areas of mental functioning. Tr. 295-296. Mr. Sebastianelli found that Miller had, <u>inter alia</u>, moderate limitations with respect to her ability to understand, remember and carry out detailed instructions. <u>Id.</u> In a "Mental Residual Functional Capacity Assessment" dated January 22, 2009, Mr. Sebastianelli indicated that Miller "is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment." Tr. 297. The administrative law judge's reliance on the opinion of Mr. Sebastianelli was appropriate. <u>See</u> <u>Chandler v. Commissioner of Soc. Sec.</u>,__F.3d.__, 2011 WL 6062067 at *4 (3d Cir. Dec. 7. 2011)("Having found that the [state agency physician's] report was properly considered by the ALJ, we readily conclude that the ALJ's decision was supported by substantial evidence[.]").

    The administrative law judge appropriately took into account Miller's mental limitations in the residual functional capacity assessment. The administrative law judge limited Miller to low stress unskilled work which involved simple, repetitive tasks and did not require strict production quotas.

    The administrative law judge stated that Miller's statements concerning the intensity, persistence and limiting effects

of her symptoms were not credible to the extent that they were inconsistent with the ability to perform her prior relevant work as a cashier and stable hand. Tr. 17. The administrative law judge was not required to accept Miller's claims regarding her mental limitations. See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)(providing that credibility determinations as to a claimant's testimony regarding the claimant's limitations are for the administrative law judge to make). It is well-established that "an [administrative law judge's] findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the administrative law judge] is charged with the duty of observing a witness's demeanor . . . ." Walters v. Commissioner of Social Sec., 127 f.3d 525, 531 (6th Cir. 1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991)("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess the witness credibility."). Because the administrative law judge observed Miller when she testified at the hearing on March 18, 2010, the administrative law judge is the one best suited to assess the credibility of Miller.

     As for Miller's claims that the administrative law judge failed to develop the record and demonstrated bias, Miller has neither indicated how the administrative law judge failed to develop

the record nor proffered any additional evidence,[17] and we are unable to discern from the tenor of the ALJ's decision and the hearing transcript any inappropriate bias which would warrant a remand for a new hearing.

Our review of the administrative record reveals that the decision of the Commissioner is supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) affirm the decision of the Commissioner.

An appropriate order will be entered.

<pre>
                              S/ James M. Munley
                              JAMES M. MUNLEY
                              United States District Judge
</pre>

Dated: March 15, 2012

---

17. Miller is presently represented by the same attorney who advocated for her during the administrative proceedings.